UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| YVES CONSEANT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23 CV 1113 CDP |
| ) | |
| ST. LOUIS UNIVERSITY HIGH ) | |
| SCHOOL, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiff Yves Conseant, a former French teacher at St. Louis University High School (SLUH), a Catholic educational institution, brings this action alleging that SLUH discriminated against him in his employment on account of his race and in retaliation for engaging in protected conduct, with such discrimination resulting in the school terminating his employment.  On April 19, 2024, I converted SLUH's Rule 12(b)(6) motion to dismiss to one for summary judgment under Rule 56, and I provided the parties the opportunity to present evidence on the motion, which they both did.  Because the undisputed evidence shows that Conseant's role at SLUH was ministerial, the "ministerial exception" bars Conseant's claims of employment discrimination against the religious institution.  SLUH is therefore entitled to judgment as a matter of law on Conseant's claims, and I will grant SLUH's motion for summary judgment.

## Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a). The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).

I view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Scott v. Harris,* 550 U.S. 372, 379 (2007). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The substantive law determines which facts are critical and which are irrelevant. *Id.* Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, the Court considers only those facts that can be supported by admissible evidence. Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005). Testimony that would not be admissible is ignored. *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).

**Employment Discrimination and the "Ministerial Exception"**

Claims of employment discrimination generally proceed through the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). At the first step, the plaintiff must present evidence sufficient to prove a *prima facie* case of discrimination based on a protected characteristic – here, Conseant's race and protected conduct. *Id.* at 802. If the plaintiff makes that showing, the burden shifts to the defendant to present a "legitimate, non-discriminatory" explanation for the challenged employment action. *Id.* If the defendant meets its burden at the second step, the burden then returns to the plaintiff, who must prove by a preponderance of the evidence that the justification put forward by the defendant is pretextual. *Id.* at 804.

The *McDonnell Douglas* analysis yields to First Amendment considerations, however, in certain claims against religious employers. The Free Exercise and Establishment Clauses protect "the right of religious institutions to decide for themselves, free from state interference, matters of church government as well as

those of faith and doctrine." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 736 (2020) (internal quotation marks and citations omitted). These clauses thus "foreclose certain employment discrimination claims brought against religious organizations." *Id.* at 747. This "ministerial exception" is an affirmative defense that prohibits courts from interfering with employment disputes between religious institutions and certain employees. *Hosanna-Tabor*, 565 U.S. at 195 n.4.

The ministerial exception was first applied to religious or ministerial leaders. *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188-89 (2012). It has since been expanded to include teachers at religious institutions that perform religious functions. *See Our Lady of Guadalupe Sch.*, 591 U.S. at 738.

In *Hosanna-Tabor*, the Supreme Court recognized that courts are prohibited from interfering with religious institutions' employment decisions regarding their ministerial leaders. 565 U.S. at 188-89. Applying the ministerial exception to that case, the Supreme Court held that an elementary school teacher could not bring an employment discrimination claim against the religious school where she taught because the school held her out as a minister. *Id.* at 191. In support of this holding, the Supreme Court cited the teacher's title as "Minister of Religion, Commissioned," her extensive religious training, and her job responsibilities to teach religion and participate in religious activities with students. *Id.* at 191-92.

In *Our Lady of Guadalupe*, the Supreme Court expanded the ministerial exception to prohibit courts from intervening in employment disputes involving teachers who did not hold the title of minister at religious schools. 591 U.S. at 756-57. Specifically, the Supreme Court held that religious responsibilities can impart a "ministerial" label to lay teachers at religious schools. *Id.* at 740-44 (describing the qualifying religious responsibilities as providing religious instruction to students every day; preparing students for Mass, communion, and confession; and worshipping with students). In addition, the Supreme Court noted that the teachers' schools "expressly saw them as playing a vital part in carrying out the mission of the church," as the core mission of the schools was to educate and form students in the Catholic faith. *Id.* at 757. The Court explained that because "judges cannot be expected to have a complete understanding and appreciation of the role played by every person who performs a particular role in every religious tradition[, a] religious institution's explanation of the role of such employees in the life of the religion in question is important" in determining whether the ministerial exception applies to a particular position. *Id*. at 757-58.

### The Ministerial Exception Applies to Conseant's Claims

<u>SLUH's Explanation of the Role of its Teachers</u>

SLUH explains in its Faculty and Staff Handbook that every member of its faculty and staff "is required to actively participate in effectuating the religious

mission" of the school, which is described as, *inter alia*, being "dedicated to building Christ's kingdom of truth, justice, love, and peace" and helping its students "develop compassionate hearts by fostering habits of personal prayer, reflection, and service for the Greater Glory of God."  (ECF 27-1, Exh. 2 to Stewart Decl., Handbook at p. 7.)

According to the Handbook, SLUH faculty are encouraged to attend morning mass, parent-son liturgies, family masses, class prayer services, and formational activities such as retreats.  New teachers attend a three-day Ignatian retreat in the spring, and additional spiritual conferences and formation requirements are imposed for second, third, and fourth-year teachers.  (ECF 27-1, Exh. 2 to Stewart Decl., Handbook at pp. 19-23.)  The Handbook explains that the teachers' goals are "to grow in our competence and in building Christ's Kingdom of Justice, love, and peace" and to "challenge our students and ourselves to life-long discovery and development of our gifts for the service of God and others." (*Id.* at p. 27.)  (Internal quotation marks omitted.)  The Handbook also sets out the following professional standard expected of SLUH teachers:

> In a Jesuit school, faculty and staff maintain positive attitudes towards the formation of "men for and with others."  They seek to integrate the Ignatian vision found in SLUH's philosophy and mission into all aspects of their work.  They demonstrate an appreciation of teaching as ministry and as a means of promoting the Kingdom of God. Faculty and staff assist students in finding God in all things through personal example, teaching, co-curriculars, and interactions with students.  Faculty and staff instill a passion for the magis.

- 6 -

(*Id.* at p. 117.)  Finally, the Handbook includes SLUH's express incorporation of and reliance upon its Catholic mission in its hiring and employment practices:

> As a Catholic Jesuit school, [SLUH] reserves the right to establish employment practices that preserve its state and federal protections as a religious institution.  Therefore, . . . [SLUH] may grant more favorable consideration to Roman Catholic applicants than non-Roman Catholic applicants in the employment process, since *every member of the [SLUH] faculty and staff is required to actively participate in effectuating the religious mission*.  All employees must respect Catholic values and Jesuit traditions.  Actions that are seriously at variance with the fundamental teachings of the Catholic Church . . . are prohibited.

(*Id.* at pp. 7-8.)  (Emphasis added.)

Based on its employment requirements, mission statements, and directives, SLUH clearly views its faculty members as playing an important role in carrying out its core mission to provide a Christian-based education to its students.

<u>Conseant's Role as a SLUH Teacher</u>

In December 2020, plaintiff Conseant executed an employment agreement with SLUH that was expressly based on "the recognition of [his] professionalism and his . . . commitment to the goals and ideals of Jesuit education, as stated in the [SLUH] Faculty and Staff Handbook[.]"  (ECF 27-4, Exh. 2 to Voegtli Decl, Faculty Agreement.)  In the agreement, Conseant agreed to, *inter alia*, "perform with professionalism in accordance with the School's stated philosophy and the goals and the established policies and procedures published in the [SLUH] Faculty

- 7 -

and Staff Handbook," and to "promote and actively support the principles and ideals for which the School stands[.]" (*Id.*)

According to SLUH's Assistant Principal, Jim Linhares, Conseant was required as a faculty member to attend all-school masses and participate in the school's daily prayer exercises (ECF 27-2, Linhares Decl. at ¶ 27); and faculty notes from observations made in Conseant's classes during the 2021 spring semester show that he involved his students in prayer and preparation for Mass during class:

February 8, 2021
- "It is almost time for you to go, so let us move to our prayer."
- pauses recitation of prayer so that students may correct pronunciation
- Conseant and class listen to Zoom student read prayer

April 8, 2021
- call and repeat the Our Father ("Notre père") and the Act of Contrition ("Acte de contrition")
- Conseant reports that he often has his Zoom students lead the class in prayer
- students make the sign of the cross
- preparing to perform as the chorus for a French Mass, a mandatory event in the chapel
- end class singing a religious song in French and praying with gestures

April 16, 2021
- sing prayer at beginning of class
- students sing "Jesus song" as a class and with solos
- addresses Mass for 4th and 5th levels, will perform song
- prayer at the end, Act of Contrition

(ECF 27-2, Linhares Decl.; Exh. 27-3, Toussaint Decl.; ECF 27-5, Alvarado Decl.; ECF 28-2, Pltf's Resp., Exh. A.) Against this backdrop, there is no merit to

- 8 -

Conseant's unsworn assertion that his work "has never been associated with any religious affiliations." (*See* ECF 28, Pltf's Resp. at p. 6.)

Ministerial Exception Applies

When looking at SLUH's declared Catholic Jesuit mission, its directives to and expectations of its teachers in fulfilling that mission, Conseant's agreement to perform in accordance with the school's religious mission, and evidence that Conseant guided his students in prayer and in preparing for Mass, it is apparent that Conseant performed religious duties for the school and that the school considered him as playing an important part in carrying out its expressed mission. *See Our Lady of Guadalupe Sch.* 591 U.S. at 756-57. *See also, e.g.*, *Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 331 (4th Cir. 2024) (ministerial exception applied to claims of English and drama teacher at Catholic high school where he began each class with prayer in accordance with school's expectations, attended Mass with his students, and opted to receive communion); *Butler v. St. Stanislaus Kostka Cath. Acad.*, 609 F. Supp. 3d 184, 196-97 (E.D.N.Y. 2022) (ministerial exception applied to claims of English and social studies teacher who took part in morning prayer with students, attended Mass with students, attended students' confirmations, and was required to complete school's catechism program during tenure as teacher); *Lishu Yin v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803, 817 (D.S.C. 2018) (ministerial exception applied to claims of Christian university

- 9 -

faculty member who required her students to pray, prayed with her students, led students in chapel, integrated biblical materials into her courses, and prepared students for ministry roles).

Because Conseant's role at SLUH involved agreeing to and actively carrying out the school's mission in fostering habits in service to the Greater Glory of God and the Catholic-Jesuit education, Conseant qualifies as a "minister" for purposes of the ministerial exception.  Consequently, this Court cannot interfere with the employment disputes between Conseant and SLUH as alleged in this action, and SLUH is entitled to summary judgment on Conseant's claims of employment discrimination.

Accordingly,

**IT IS HEREBY ORDERED** that defendant St. Louis University High School's Motion to Dismiss [13] (converted to a motion for summary judgment) and Motion for Summary Judgment [25] are **GRANTED**.

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of July, 2024.